**John C. MASON, Petitioner–Appellant,**

v.

**Jack R. DUCKWORTH, Respondent–Appellee.**

**No. 95–1710.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1995.

Decided Jan. 24, 1996.

James H. Voyles, Symmes, Voyles, Zann, Paul & Hogan, Indianapolis, IN and Mark C. Webb (argued), Indianapolis, IN, for Petitioner–Appellant.

Randall Koester (argued), Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before MANION, ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

One should never underestimate the importance of good timing. Had John Mason's ex-wife Patricia been murdered after September 27, 1991, rather than in the fall of 1985, his chances of being a free man today—instead of a guest of the State of Indiana at one of its penal institutions—would be appreciably better. But Mason's timing was bad, as we'll explain in this decision affirming the denial of his federal habeas corpus petition.

On October 15, 1985, the body of forty-three-year-old Patricia Mason was found lying in a pool of blood on the floor of the garage at her home in Lebanon, Indiana. She had been struck with a hammer and shot, repeatedly, in the head. At the time of her death, Patricia's divorce from John, after more than twenty years of marriage, was only seven months old, and she was living with Gerald Lumpkin, a man she had taken up with while her marriage was still, legally at least, intact. The divorce was not only fresh, it was bitter as well, as the Masons were fighting over things like money and visitation rights. Apparently, jealousy was also in the picture as John had a fellow named James Comer (who had an unusual combination of jobs: a handyman and a private detective) follow Patricia and Lumpkin around to see what they were up to.

John was an instant suspect in Patricia's death. A grand jury looked into the crime in 1986, but no indictments were returned. The killer's trail went cold, but it got hot four years later, in 1990, when police received a tip. To make a long story short, John was

eventually charged with hiring a man named John Morgan to kill Patricia and, later in 1987, to kill Lumpkin as well. Separate juries, after trials lasting more than two weeks each, convicted John of complicity in the murder of Patricia and involvement in the plot to kill Lumpkin. He was sentenced to terms of imprisonment totaling 80 years. His convictions were affirmed in separate unpublished decisions by the Indiana Court of Appeals. The Indiana Supreme Court, on separate votes of 4–1 in 1992 and 1993, declined to review the convictions. Mason then filed this habeas petition in the United States District Court for the Southern District of Indiana. The case is before us on appeal from the denial of the petition.

Central to both jury trials, and to this appeal, was evidence presented regarding Morgan, the hit man. Prior to the trial, Morgan gave a tape-recorded statement to the police. In the statement, he recalled, chillingly recalled we should add, how he was hired by John to kill Patricia and her lover, Lumpkin. He admitted that he had in fact committed the murder of Patricia, but that he had not been successful in "getting to" Lumpkin. Morgan's statement, which was loaded with details (a $2,000 down payment for the murder, the crime itself, the disposal of the hammer and gun, and the final $5,000 payment from Mason) was, by far, the strongest arrow in the State's quiver of evidence against Mason.

Several days after obtaining Morgan's statement, the State's case suffered a setback when Morgan changed his story; he said he had no agreement with John about anything and no involvement in the murder of Patricia. The setback to the State's case, however, was not as severe as one might think due to the Indiana rule that is the subject of this appeal.

Although Morgan repudiated his initial statements at each of Mason's trials, they nevertheless came into evidence through the tape recordings and the testimony of officers who had been present when they were given.[1] Morgan's initial statements implicating Mason were admitted as substantive evidence under Indiana's "Patterson rule." The rule was set out in *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (Ind., 1975), when the Indiana Supreme Court held that out-of-court statements were admissible as substantive evidence where the declarant (1) acknowledged having made the out-of-court statement, and (2) was present and available for cross-examination. *Patterson*, at 57–58, 484–85. Out-of-court statements that satisfied these requirements were not "hearsay" under Indiana law. Indiana felt that proof that the statement had been made, either through a recording, *Hennings v. State*, 532 N.E.2d 614, 615 (Ind., 1989), or through a declarant's own admission, together with the opportunity for meaningful cross-examination, provided the indicia of reliability the hearsay rule was designed to safeguard. Morgan acknowledged having made the prior statements, and he was present and available for cross-examination at both of Mason's trials. Because the requirements of the *Patterson* rule were satisfied, Morgan's initial statements were found to be admissible as substantive evidence against Mason. And here's where the question of timing enters the case.

The Lumpkin conspiracy case was tried first, and Mason was sentenced in that case on April 8, 1991. His conviction was on appeal when he went to trial for Patricia's murder in September of 1991. Morgan's initial statements (via the tape recordings and police testimony) were presented to the jury under the *Patterson* rule about midway through the trial. On September 26, 1991, just one day before the jury returned guilty verdicts against Mason, the *Patterson* case was overruled by the Indiana Supreme Court in *Modesitt v. State*, 578 N.E.2d 649 (Ind., 1991). In *Modesitt*, Indiana's high court re-

---

1. Morgan, at both trials, attempted to explain his initial taped statement, saying he was merely repeating a story he had heard from others. This explanation was undermined, however, by his consistent use of the first person and by statements he made on tape such as "I went back. Told her I'd like to fix her fence there. She said, 'Okay.' But I told her I needed the hammer and nails and everything. So when we walked in the garage to get it, I knocked her out and shot her." His denial of involvement during the trial seems to us to be far less than convincing. His voice on the tape, on the other hand, has the ring of truth.

jected the *Patterson* rule, adopting instead the text of Federal Rule of Evidence 801(d)(1)(A). This rule, now codified in Indiana as Indiana Rule of Evidence 801(d)(1), provides that:

> [a] statement is not hearsay if ... declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]

The rule announced in *Modesitt* adds an additional requirement for admissibility—the out-of-court statement must have been made under oath in a judicial or quasi-judicial proceedings. The new rule, if applied to this case, would make Morgan's statements inadmissible as substantive evidence against Mason because they were not made under oath. Mason, of course, argues that *Modesitt* applies to his case.

Mason argues that because *Modesitt* was decided while both cases against him were "pending," the Patricia trial and the Lumpkin appeal should have been decided under the new *Modesitt* rule. The Indiana Court of Appeals disagreed, primarily because *Modesitt* expressly stated that the new rule would apply "from this point forward" and should not "be given retroactive application to any pending or previously-determined cases." *Modesitt* at 654.

■■■■■ A federal court may grant relief from a state court conviction only if it finds that a person is being held in custody in violation of the United States Constitution. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Indiana is free to change its rules of evidence as it deems appropriate, as long as those changes, and the means by which they are implemented, are not constitutionally impermissible.

In asking us to review an interpretation of Indiana law by the highest court of that state, Mason bases his claim on *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *Griffith* instructs that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith* at 328, 107 S.Ct. at 716. A reading of that sentence in isolation would seem to indicate that Mason does indeed have a claim for federal habeas relief. As Judge McKinney in the district court noted, however, there is an "explicit caveat" to the holding: *Griffith* only applies to new rules of federal constitutional magnitude.

■■■■■ Mason asserts that Indiana was "forced" to overrule *Patterson* "to ensure defendants their constitutional rights to confront and cross examine witnesses as well as to a fair trial." If this assertion is true, Mason is correct in arguing that *Griffith* applies to his cases which were "pending" at the time the law was changed. But the assertion is false; the change in Indiana's evidentiary rules announced in *Modesitt* had nothing to do with the constitutionality of the *Patterson* rule. The *Modesitt* court stated its reasons for changing this rule of evidence quite clearly. The court found that the *Patterson* rule had often been abused,[2] and was "no longer recognizable because of the grafting onto it of additional requirements and limitations." *Modesitt* at 652. In adopting the federal rule, the court sought to curb abuse and harmonize its evidentiary rules with those of other jurisdictions. *Modesitt* at 653. *Patterson* was overruled not because it was unconstitutional, but because the Indiana Supreme Court came to believe that it was unworkable. In *Modesitt*, Indiana chose to abandon a state evidentiary rule which had never been found unconstitutional,[3] and to

---

2. There is no indication that *Patterson* was abused in Mason's case. On the contrary, the Indiana appellate decisions, with which we agree, specifically found that no abuse of *Patterson* occurred in either of Mason's trials.

3. The Supreme Court has never required an out-of-court statement to be made under oath in order for its admissibility to pass constitutional muster. On the contrary, the Court has made clear that, while "the hearsay rules and the Confrontation Clause are generally designed to protect similar values ... the Confrontation Clause

replace it with a new rule of evidence whose constitutionality is unchallenged. This change in the rules of evidence is simply not one of constitutional proportions, and for that reason *Griffith* does not apply. The decision of the district court denying Mason's petition for a writ of habeas corpus is, therefore, affirmed.

is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 155–58, 90 S.Ct. 1930, 1932–35, 26 L.Ed.2d 489 (1970). In fact, the text of F.R.E. 801(d)(1)(A) as originally promulgated by the Advisory Committee and prescribed by the Court did not contain the requirement that the prior statement have been made under oath. Michael H. Graham, *Federal Practice and Procedure* § 6711, n. 14. Wisconsin, we might add, still uses a rule of evidence that is consistent with Indiana's *Patterson* rule. *See* § 908.01(4)(a), Wis.Stat., which excludes a statement like Morgan's here from Wisconsin's definition of hearsay, and *Gelhaar v. State*, 41 Wis.2d 230, 163 N.W.2d 609 (1969).