Ronald MASON, Petitioner–Appellant,

v.

Craig A. HANKS, Respondent–Appellee.

No. 95–1908.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1995.

Decided Aug. 27, 1996.

John Pinnow, Greenwood, IN (argued), for Petitioner–Appellant.

Pamela Carter, Randy Koester (argued), Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before FLAUM, ROVNER, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

An Indiana jury convicted Ronald Mason of possessing in excess of three grams of heroin with the intent to deliver, and the trial judge sentenced him as a habitual offender to a term of eighty years. Mason sought a writ of habeas corpus from the district court, contending (among other things) that he was denied the effective assistance of appellate counsel when his attorney failed to challenge the admission of the out-of-court statements of an informant that Mason was distributing heroin. The district court denied the petition. We reverse and remand with directions to conditionally grant Mason a writ of habeas corpus unless he is afforded a new appeal or is retried.

## I.

In May 1985, Detective Tommie B. Terrell of the Indianapolis police was informed that Mason was distributing heroin from his apartment in Indianapolis. Terrell and another detective surveilled the Wingate apartment complex on May 14 and 15 and witnessed numerous individuals visiting the apartment building for short periods of time, although Terrell could not ascertain whether they were visiting Mason's apartment. On the afternoon of May 15, Mason left Indianapolis with his fiancee, Sandra Wilson. They drove Wilson's van to Clearwater, Florida to visit Wilson's parents. After a three-week stay, the couple arrived back in Indianapolis at about 1:00 a.m. on June 6.

Later in the day of June 6, an informant tipped Detective Terrell that Mason had returned to Indianapolis and was selling heroin from a van. Terrell prepared an affidavit in support of an application for a search warrant, indicating that a confidential informant had seen Mason distributing heroin "within the past (72) hours prior to June 6." Based on that affidavit, a magistrate found probable cause to search Mason's apartment as well as the van.

Armed with the search warrant, Terrell and another officer stopped the van in the parking lot of a White Castle restaurant that evening. The van was subsequently searched as was his apartment. Nothing was found. However, a search of Mason's person produced (from his left sock) $325 in cash and six aluminum foil bindles containing slightly more than three grams of brown powder which, upon later examination, proved to be heroin.

The State charged Mason with both the possession of a narcotic drug (a class C felony) and the distribution of that drug (a Class A felony). In advance of trial, Mason attempted to learn the identity of the State's confidential informant. The State demurred, citing concerns for the informant's safety. After two in camera hearings, the trial court denied Mason's request for disclosure. Mason also sought to suppress evidence of the heroin and cash found on his person, contending that the affidavit on which the magistrate had found probable cause to search the van and Mason's home was not truthful. As we have noted, Terrell averred in the affidavit that Mason had been seen dealing heroin from the van within seventy-two hours prior to June 6. Yet, Mason had not returned to Indianapolis until 1:00 a.m. on June 6, and thus could not have been selling heroin on the streets of Indianapolis within the three-day period *prior* to June 6. After extensive hearings on the matter, however, the trial court construed the 72–hour period referenced in Terrell's affidavit to include the day of June 6 itself, up to the time that the affidavit was submitted to the magistrate early that evening. R.P.Ex. A 260, 262–63, 265, 287–88, 290; *see also id.* at 332–33. Accordingly, the court denied Mason's motion to suppress.

Terrell testified at Mason's trial. Over Mason's objection, Terrell explained that he had initiated surveillance of the Wingate apartment complex based on information received on May 13 (from an undisclosed source) that Mason was selling heroin from his residence in that complex. R.P.Ex. A 307–08. Again over Mason's objection, Terrell went on to explain that he renewed his investigation of Mason several weeks later when he learned from his source that Mason was back in town and distributing heroin from the van. R.P.Ex. A 315–16. The confidential informant who provided this information was never identified and, of course, did not testify.

In view of the fact that the heroin was found on his person, Mason did not disclaim possession of the narcotic, but argued that the entire quantity was meant for his own personal use, not for distribution to others.

The jury rejected that argument and convicted Mason both of possessing the heroin and with distributing it. Finding that Mason had previously been convicted of at least two unrelated felonies, the jury also determined that he qualified as a habitual offender.

The court subsequently sentenced Mason to the maximum prison term of fifty years on the distribution charge, a term which was then enhanced by another thirty years because Mason qualified as a habitual offender. The court also sentenced Mason to a term of eight years on the possession charge, although the court merged that sentence with the far longer sentence on the distribution charge.

The Indiana Supreme Court vacated Mason's sentence on the distribution charge and remanded for resentencing, but affirmed his conviction on that charge. Like the trial court, the supreme court did not find the affidavit submitted to the magistrate to be untruthful.

> [W]e agree with the trial court that the 72 hour period must be considered as ending when the magistrate signed the affidavit. Detective Terrell testified during the In Camera Hearing that the information was supplied to him within the 72 hours prior to going before the magistrate. He testified the information he received from the informant was received after 12:00 midnight on June 6 and before he went to the magistrate. This period includes the time from 1:00 a.m. to 6:00 p.m. on June 6, 1985, approximately 17 hours within which Mason admits to being in Indianapolis and within which it was possible for the informant to observe Mason dealing in heroin, report to Detective Terrell, and in turn for Terrell to prepare the probable cause affidavit. Thus, misrepresentation by the State has not been demonstrated. The trial court did not err in denying Mason's motion to suppress. . . .

*Mason v. State,* 532 N.E.2d 1169, 1170 (Ind.), *cert. denied,* 490 U.S. 1049, 109 S.Ct. 1960, 104 L.Ed.2d 428 (1989). The court found no error in the denial of Mason's request for an order compelling the State to disclose the identity of its informant. "[T]here is no showing that disclosure was relevant or help-

ful to Mason's defense or essential to a fair determination of this case." *Id.* at 1171. The court also rejected Mason's challenge to the sufficiency of the evidence supporting his conviction for distributing heroin:

> The street value of the heroin found on Mason's person was approximately $375. The amount of heroin found in Mason's possession, slightly over three grams, was the equivalent of 30 single dosage units of one-tenth of a gram each. Detective Terrell testified that a heavy user might use five or six one dosage units in one day. Detective Terrell also clearly indicated a heroin user would not have that quantity in his possession at one time. Rather, the amount was more consistent with what a dealer would carry on his person, particularly a dealer without a personal drug habit. Detective Terrell testified Mason did not appear to be a heroin user as he did not have "track marks" or swollen hands, which all users exhibit regardless of method. Thus, the quantity of drugs found in Mason's possession was large in view of the inference that Mason was not a heroin user. Further, the informant specifically told police that Mason was seen selling heroin. This evidence was sufficient to support the jury's determination that Mason possessed heroin with the intent to deliver.

*Id.* at 1171. Finally, because the possession of a narcotic drug is an inherent part of possessing the drug with the intent to deliver, the court found Mason's separate conviction and sentence on the possession charge to violate the Double Jeopardy Clause of the Fifth Amendment. *Id.* at 1171–72. Accordingly, the court remanded the cause to the trial court with instructions to vacate Mason's conviction and sentence on the lesser charge and resentence him on the distribution charge alone. *Id.* at 1172.

After the lower court reimposed the eighty-year sentence on the distribution charge, Mason sought post-conviction relief in the Indiana courts. He argued that the attorney who represented him at trial and on appeal was ineffective in that he (1) failed to object adequately to, and then to appeal, the trial court's ruling permitting Detective Ter-

rell to recount what the informant had told police regarding Mason's purported drug trafficking; (2) failed to renew Mason's pretrial request to disclose the identity of the informant at trial; (3) failed to argue that, in eliciting testimony from Terrell as to what the informant had said about Mason's asserted drug trafficking, the State was impermissibly introducing evidence of extrinsic crimes into the trial; (4) failed to object to the habitual offender instructions given the jury; and (5) failed to object to the trial judge's purported reliance upon his personal sentencing philosophy in imposing an eighty-year term on Mason. The post-conviction court rejected these arguments, and the Indiana Court of Appeals affirmed in an unpublished opinion.

Mason then filed a petition for a writ of habeas corpus in the district court, arguing that the state trial court had erred in denying his motion to suppress and that (for the reasons he had articulated in the state post-conviction proceeding) he had been denied the effective assistance of counsel at trial and on direct appeal. The district court denied the petition. Finding that Mason had a full and fair opportunity to litigate the Fourth Amendment questions raised by his motion to suppress in state court, the court deemed any inquiry into the merits of this issue foreclosed under *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). As the state courts had, the district court also rejected Mason's contention that he had been denied the effective assistance of trial and appellate counsel.

## II.

Mason makes three principal arguments to us in this appeal. First, he contends that he was denied his Sixth Amendment right to the effective assistance of trial and appellate counsel. Second, he argues that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court refused to order disclosure of the identity of the State's confidential informant. Finally, he maintains that the district court erred in concluding that he had a full and fair opportunity to litigate his Fourth Amendment concerns in state court and that these

concerns therefore are not cognizable on habeas review. For the reasons that follow, we conclude that Mason was denied the effective assistance of appellate counsel. We therefore do not consider the other arguments Mason has advanced.[1]

The Sixth Amendment, made applicable to the States by way of the Due Process Clause of the Fourteenth Amendment (*see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), entitles a criminal defendant to the effective assistance of counsel not only at trial, but during his first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). As the Court explained in *Evitts:*

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake. To be sure, respondent did have nominal representation when he brought this appeal. But nominal representation on an appeal of right—like nominal representation at trial—does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.

469 U.S. at 396, 105 S.Ct. at 836. A defendant whose lawyer does not provide him with effective assistance on direct appeal and who is prejudiced by the deprivation is thus entitled to a new appeal. *See, e.g., Mayo v. Henderson,* 13 F.3d 528, 537 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *Claudio v. Scully,* 982 F.2d 798, 806 (2d Cir.1992), *cert. denied,* 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993); *Fagan v. Washington,* 942 F.2d 1155, 1156 (7th Cir.1991); *Barry v. Brower,* 864 F.2d 294, 300–01 (3d Cir.1988); *Matire v. Wainwright,* 811 F.2d 1430, 1439 (11th Cir. 1987); *Grady v. Artuz,* 931 F.Supp. 1048, 1053–54 (S.D.N.Y.1996); *Laffosse v. Walters,* 585 F.Supp. 1209, 1214 (S.D.N.Y.1984).

Generally speaking, the performance of appellate counsel is assessed using the same standards applied to trial counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *E.g., Freeman v. Lane,* 962 F.2d 1252, 1257 (7th Cir.1992); *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [or the appeal] cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. We indulge a strong presumption that the petitioner's counsel was constitutionally effective. *Id.* at 688, 104 S.Ct. at 2064; *Hollenback v. United States,* 987 F.2d 1272, 1275 (7th Cir. 1993). In order to prevail on a Sixth Amendment ineffectiveness claim, the petitioner must satisfy both prongs of a two-pronged test. He must first show that his lawyer's

---

**1.** After we heard oral arguments in this appeal, the President signed into law what is known as the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. Among other things, the statute adds a new provision to 28 U.S.C. § 2254, under which Mason seeks relief. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

We need not consider what impact, if any, this new provision might have upon Mason's claims of ineffectiveness, which were adjudicated in the State post-conviction proceedings. The question does not go to our jurisdiction, and Indiana has not asked us to consider it. We therefore deem the subject waived. *Emerson v. Gramley,* 91 F.3d 898, 900 (7th Cir.1996).

performance "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064; *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). As the Court observed in *Strickland,* "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." 466 U.S. at 688–89, 104 S.Ct. at 2065. Thus, unless a particular act or omission of counsel amounts to ineffectiveness *per se,* the petitioner must show that it is beyond the realm of reasonable professional judgment within the context of the case, at the time that counsel acted—that it could not be considered a reasonable tactical decision, in other words. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66; *Williams v. Washington,* 59 F.3d 673, 679 (7th Cir.1995). Second, the petitioner must also show that any ineffectiveness prejudiced him, rendering the proceeding fundamentally unfair and the result unreliable. *Strickland,* 466 U.S. at 687, 691–92, 104 S.Ct. at 2064, 2066–67; *Lockhart,* 506 U.S. at 369–70 & n. 2, 113 S.Ct. at 842–43 & n. 2.

■ Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course. *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). After all, "[o]ne of the principal functions of appellate counsel is winnowing the potential claims so that the court may focus on those with the best prospects." *Page v. United States,* 884 F.2d 300, 302 (7th Cir.1989). This is not to say that counsel's selection of the issues to pursue on appeal is beyond scrutiny. "Were it legitimate to dismiss a claim of ineffective assistance of counsel on appeal solely because we found it improper to review appellate counsel's choice of issues, the right to effective assistance of counsel on appeal would be worthless." *Gray,* 800 F.2d at 646. Instead, we engage in a pragmatic assessment of appellate counsel's work. Genuinely strategic decisions that were "arguably appropriate at the time, but, with the benefit of 'hindsight', appear[ ] less than brilliant" will not be second-guessed. *Gray,* 800 F.2d at 646 (citing

*United States v. Harris,* 558 F.2d 366, 371 (7th Cir.1977)).

■ But when appellate counsel omits (without legitimate strategic purpose) "a significant and obvious issue," we will deem his performance deficient (*Gray,* 800 F.2d at 646; *Hollenback,* 987 F.2d at 1275), and when that omitted issue "may have resulted in a reversal of the conviction, or an order for a new trial," we will deem the lack of effective assistance prejudicial (*Gray,* 800 F.2d at 646). Thus:

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Gray,* 800 F.2d at 646; *see also Hollenback,* 987 F.2d at 1275. The ultimate question we ask is "whether, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding [here, Mason's direct appeal] would have been different." *Freeman,* 962 F.2d at 1258.

The principal omission that Mason attributes to his appellate counsel, and the one on which we shall focus exclusively, is the failure to challenge Terrell's testimony as to what the confidential informant had told the police about Mason's heroin trafficking. Mason's lawyer (he was represented at trial and on appeal by the same individual) twice objected to that testimony at trial, contending that it was hearsay. The trial court overruled the objection both times. Now, Mason suggests that his lawyer should have broadened the basis for his objection, arguing, for example, that the testimony concerning the informant's tip implicated Mason's right to cross-examine the informant under the Confrontation Clause of the Sixth Amendment, that it improperly introduced extrinsic evidence of Mason's other "bad acts" into the trial, and that the testimony made all the more compel-

ling Mason's previously rejected demand that the identity of the informant be disclosed. Both the Indiana appellate court, at the post-conviction stage, and the district court found that Mason's counsel had objected adequately to Terrell's testimony and that further objections would have been unavailing. We are not inclined to question that finding at this juncture. The trial court, after all, had accepted the State's contention that what the informant told the police about Mason was offered not for its truth (that Mason was distributing heroin) but for the limited purpose of explaining the course of the police investigation. The additional objections that Mason posits now would almost certainly have been unavailing, therefore, given that they all stem from the notion that the testimony was in fact offered and relied upon for its truth, a proposition that the trial judge never accepted. That having been said, the failure to pursue the hearsay objection on appeal remains a mystery.

▆▆ We pause to clarify one point. Whether Terrell's testimony amounted to inadmissible hearsay presents a question of state law, of course; but this poses no impediment to Mason's claim of ineffectiveness. True, it is not ordinarily our province on habeas review to concern ourselves with errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Mason v. Duckworth*, 74 F.3d 815, 818 (7th Cir.1996). Our concern instead is with federal constitutional errors. *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.1996); *Mason*, 74 F.3d at 818. But the constitutional right at stake here is the right to the effective assistance of counsel on appeal, and in that context we may consider the state, as well as the federal issues that the petitioner's counsel did not pursue. *Fagan*, 942 F.2d at 1157–58; *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.) (citing *Claudio v. Scully, supra*, 982 F.2d at 805), cert. denied, —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). Using the test we first outlined in *Gray*, we therefore turn to consider whether Mason's appellate counsel rendered ineffective assistance to his client when he failed to raise the hearsay issue in Mason's direct appeal.

▆▆ Because we ordinarily do not second-guess the plausible, strategic decisions that appellate attorneys make in deciding which issues to pursue on behalf of their clients, we must emphasize at the outset that the omission of the hearsay issue from Mason's direct appeal was not, so far as the record informs us, the result of a reasoned assessment of the merits of that issue. When he testified at the post-conviction hearing, Mason's attorney confessed that he could not explain the omission of the issue, other than to guess that he might have thought it subsumed within the arguments concerning the unsuccessful motion to suppress. R.P. 156. Yet, the most that can be said is that those two issues were related, in the sense that both related to what the informant told the police about Mason. Other than that, the suppression issue had nothing to do with Terrell's testimony, and as Mason's counsel conceded, nothing in the appellate brief directly raised the hearsay issue. *Id.* In short, it is clear that the hearsay issue was omitted from the appeal and the omission cannot be explained by any strategic decision by Mason's appellate counsel. *See Gray*, 800 F.2d at 646; *see also, e.g., Fagan*, 942 F.2d at 1157.

That this issue was an obvious one to raise on appeal is beyond dispute. Mason's lawyer had, of course, objected to Terrell's testimony about the informant at trial. Moreover, in Mason's post-trial "motion to correct errors," the issue was highlighted. R.P.Ex. A 1 ¶¶ 4, 4–5. The groundwork had obviously been laid to pursue this issue at the appellate level.

Indiana law also reveals that the issue was and is a significant one. The Indiana Supreme Court has placed strict limits on the introduction at trial of an informant's statement to the police.

The line of authority begins with *Glover v. State*, 253 Ind. 121, 251 N.E.2d 814 (1969). The defendant in that case was charged with burglary. A police officer had seen him flee from a car in which the stolen items were found and testified to that effect at trial. On re-direct examination, the prosecutor asked him how he had later connected a picture of the defendant to the individual he had seen flee from the car. The officer responded

that he had been given the defendant's name by reliable informants. The defense, on re-cross examination, asked the officer to identify the informants, but the trial court cut off inquiry into that subject. The Indiana Supreme Court subsequently reversed the defendant's conviction, concluding that once the State had elicited testimony to the effect that anonymous informants had implicated the defendant in the burglary, it could no longer insist that their identity be kept secret.

It is important to realize that this is not a case where, on cross-examination, it is brought out that officer Mize relied upon an informant in initiating the investigation and getting leads in the investigation. There may be a public policy in preventing the non-disclosure of informants used in such instances where at trial, no evidence regarding the informant is presented to the jury. Hearsay testimony that law enforcement officers use and rely upon for investigation and the gathering of competent and material evidence, of course[,] is not evidence properly to be used in the trial of a criminal case. Here, however, we have the state opening up the matter and the activity of two informants played upon in the case, and then the state seeks to close the door after it had shown that they were "reliable" informants who put the finger of identity upon the appellant. The door cannot be closed once it is opened. If the identity of an informant is to be protected, then it is up to the prosecuting attorney not to bring into the case evidence relating to the informants.

*Id.*, 251 N.E.2d at 818. *Glover* thus recognized that the substance of what informants convey to the police ordinarily amounts to inadmissible hearsay, and that when the substance of an informant's tip is related to the jury, the truth of what the informant told the jury (and thus the informant's credibility) is necessarily placed in question.

Cases post-dating *Glover* thus confirm that although the *fact* that police received a tip may be admitted to explain why the police acted as they did, the *content* of the tip is ordinarily not admissible. *Torres v. State,* 442 N.E.2d 1021 (Ind.1982), makes just this

point. The defendant in that case had molested a child and recorded the crime in photographs. An unknown individual later broke into the defendant's apartment and stole the photographs. After extorting money from the defendant over the telephone, this individual mailed the photographs to the authorities, along with a card identifying the defendant, the victim, the woman with whom the defendant lived, and the victim's mother. The incriminating photographs were of course the focal point of the trial. But the card naming the defendant and the other individuals was also admitted into evidence, partly under the theory that it served to explain how the authorities had discovered the crime. The Indiana Supreme Court rejected this rationale and concluded that the trial court had erred (although it found the error harmless) in admitting the card into evidence. 442 N.E.2d at 1024. The court explained:

We have held "testimony of a police officer which merely relates to an investigation of alleged crimes and establishes only that the information was received within the officer's own knowledge is not objectionable hearsay." *Roberts v. State,* (1978) 268 Ind. 348, 375 N.E.2d 215, citing *Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798. In the case at bar, the incriminating statement made by an unknown and unavailable declarant specifically named appellant as the perpetrator of the offenses portrayed by the photographs. Any explanation of Officer Ballard's conduct in his investigation would have been properly limited to his testimony that he followed leads provided by the card.

442 N.E.2d at 1024. In other words, although the police officer might properly have testified that he received the card and followed up on the information provided therein, "the statements on the card were inadmissible." *Id.*

*Head v. State,* 443 N.E.2d 44 (Ind.1982), recognizes the same distinction. There a police detective, in the course of explaining his investigation and in particular why certain photographs were included in an array shown to the victim, referred to an "anony-

mous tip" received by telephone. In this instance, the court found no error:

> The record reveals ... that [Detective] Levy neither revealed the name of the informant *nor the contents of the telephone conversation;* consequently, the fact than an anonymous tip occurred was not hearsay. Defendant's objection would have been appropriate had the contents of the telephone conversation been admitted for the truth of the matters asserted therein. *Roberts v. State,* (1978) 268 Ind. 348, 375 N.E.2d 215. As it was, however, *the fact that the tip had occurred* was offered for the purpose of establishing the manner in which the police conducted their investigation. The trial court did not err in permitting Levi to testify.

443 N.E.2d at 59 (emphasis supplied).

*O'Grady v. State,* 481 N.E.2d 115 (Ind.App. 1985), *overruled on other grounds, Wright v. State,* 658 N.E.2d 563, 570 (Ind.1995), rounds out the legal picture that confronted Mason's counsel. The facts are remarkably similar to those we confront here. An informant told the Indianapolis police that the defendant was selling heroin from his automobile. Officers drove to the location referenced by the informant and spotted the defendant's car. Just as they pulled along side, an unidentified individual walked away from the vehicle. One of the officers jumped out of the car and flashed his badge at the defendant. The defendant gasped and threw a plastic bag out the window of the car. The bag was recovered, and inside it were some 26 foil packets containing just over two grams of heroin. No heroin paraphernalia was found in the car, nor did the defendant display any signs of heroin usage. At trial, one of the officers was permitted to testify that he had received a tip from an informant that the defendant was distributing heroin from his automobile. The trial court instructed the jury to disregard the substance of the tip and consider it only as an explanation for the course of action the officer had pursued. The appellate court, noting that the amount of heroin found in the defendant's possession was consistent with personal use, reversed the conviction for trafficking. *Id.* at 119. The court considered the possibility of reducing the defendant's conviction to the lesser included offense of possession, but found that course barred by the specific language of the indictment. *Id.* Even if it were possible to reduce the conviction, the court reasoned, it would be inappropriate to do so because "the whole proceedings were tainted" by testimony concerning the substance of the informant's tip. *Id.* n. 1. The court's survey of Indiana law on this subject is instructive:

> ... Ordinarily, innocuous testimony regarding general information conveyed by an informant is proper to establish the course of a police investigation. *E.g., Morris v. State* (1980), 273 Ind. 614, 406 N.E.2d 1187; *McNew v. State* (1979), 271 Ind. 214, 391 N.E.2d 607.... [But] we believe the informant's message was inadmissible and because of the extent to which Officer Wurz was allowed to elaborate on the specific information about O'Grady, rather than being limited to the mere generalities of the communication (*see, e.g., Head v. State* (1982), Ind., 443 N.E.2d 44), we believe the testimony was prejudicially irrelevant. *See Medvid v. State* (1977), 172 Ind.App. 27, 359 N.E.2d 274.

The State was able to place before the jury testimony that O'Grady was dealing, a fact not necessary to establish that the officers were merely pursuing an investigation into alleged drug activities. If the informant's information had been used to establish probable cause in this case, it may have been relevant, but probable cause was not in issue here. *Medvid v. State, supra,* 172 Ind.App. 27, 359 N.E.2d 274; *see Mayes v. State* (1974), 162 Ind. App. 186, 318 N.E.2d 811. Instead, the State was able to put in evidence the fact of O'Grady's dealing, an offense which was not otherwise supported by sufficient evidence.

We believe the better rule in such cases is to exclude specific hearsay evidence that police officers rely on and use in the course of their investigation when general information would just as easily establish the fact which triggered their actions. *See Glover v. State* (1969), 253 Ind. 121, 251 N.E.2d 814; *Mayes v. State, supra,* 162 Ind.App. 186, 318 N.E.2d 811. The better practice would be for the court to sustain a

defense objection. Then the prosecution can make an offer to prove whereby the court determine the relevancy, if any, in the testimony and can correct its ruling, by permitting general non-prejudicial information explaining the police's action. *See Torres v. State, supra,* 442 N.E.2d 1021. In a case such as this, the officer need only to state that an informant had called with regard to drug dealing at the place in question and not O'Grady's alleged role in it. Otherwise, the State could willy-nilly establish evidence before the jury, under the guise of a police investigation, which could otherwise be an "evidentiary harpoon." We do not believe our appellate courts intend to allow such prejudicial practice when they rule that evidence is admissible to show the course of an official investigation. *But see Muday v. State* (1983), Ind.App., 455 N.E.2d 984.

481 N.E.2d at 119–20 n. 1.

*O'Grady* is significant not only for its overview of the rules on the use of out-of-court statements to explain police actions but for one additional point. In *O'Grady* as in this case, the defendant's intent to distribute the heroin found in his possession was a hotly disputed issue. There as here, the amount and packaging of the heroin were consistent with distribution and the defendant did not display overt signs of heroin usage, but the evidence was not so compelling as to rule out the possibility that the defendant possessed the heroin for his own use. The court in *O'Grady* recognized that against the backdrop of ambiguous circumstantial evidence, admission of the informant's statement to the police that the defendant was, in fact, selling heroin was particularly prejudicial notwithstanding the trial court's instruction that the jury was not to consider the statement for its truth. *Id.* at 119 & n. 1. *See also Medvid v. State,* 172 Ind.App. 27, 359 N.E.2d 274, 276 (1977) (where defendant's predisposition to distribute narcotics was put into issue by entrapment defense, testimony recounting informant's out-of-court statements to police regarding defendant's drug-related activities was "highly prejudicial").

These cases, all of them decided before Mason's trial in 1986 and before his direct appeal was briefed in 1988, reveal the hearsay issue to be one of considerable substance. Although the cases recognize the propriety of permitting police officers to testify that they investigated a particular individual or took a particular action on the basis of an informant's tip, they also recognize that it is ordinarily unnecessary to relate the substance of the tip, particularly insofar as it implicates the defendant in criminal activity. When the substance of an inculpatory tip has been recounted, even for a limited purpose, Indiana courts have consistently recognized the possibility that the jury might have relied on the tip for its truth in finding the defendant guilty.

■ Our review of the record in this case discloses several facts which suggest that despite the limited, explanatory purpose for which Indiana offered Terrell's testimony about the informant's tip, Mason might well have been prejudiced by the testimony. First, the trial court did not instruct the jury that it was not to consider the information provided to the police by the informant for its truth. Second, two different statements were made by the informant, each of which was recounted for the jury: first, that Mason was distributing heroin from his apartment, and second, that Mason had returned to Indianapolis from his three-week trip to Florida and was distributing heroin from his van. Thus, Mason was twice implicated as a heroin dealer by an informant unavailable for cross-examination. Third, although the State purported to elicit testimony about the informant's statements only to explain why the police began to investigate Mason and (ultimately) sought a search warrant for the van, nothing in the record suggests that the reasons for these actions were in dispute and, in particular, that it was necessary to say anything more than that the police were simply acting on a tip (without relating what the tip was). Fourth, the State's case against Mason on the distribution charge was not strong. The evidence was limited to the heroin and cash found on Mason's person; there was no evidence of a sale or attempted sale, and nothing else incriminatory was found in either the van or Mason's apart-

ment.[2] Although, as the State emphasizes, the three-gram quantity of heroin amounts to thirty dosage units, Detective Terrell testified that an average heroin user would consume five to six doses a day, and a heavy user might consume up to eight. R.P.Ex. A 358, 360; *see also id.* at 391–92.[3] He also conceded that a user with the financial resources to do so might, in fact, buy heroin in larger quantities to take advantage of the lower per-unit cost. R.P.Ex. A 356. And although Detective Terrell testified that he did not, when he "observed" Mason, notice two classic signs of heroin use—needle tracks or swollen hands—there is no indication that Terrell undertook such a thorough examination of Mason's person that he could rule out definitively the possibility that Mason ingested heroin in any manner. R.P.Ex. A 342, 356. Finally, although several hundred dollars in cash was found on Mason's person at the time of his arrest, this is by no means an extraordinarily large or incriminatory amount. To the extent it is consistent with heroin trafficking, it is equally consistent with Mason's theory of the case—that he was simply a heroin user with the means (at least on that occasion) to buy heroin in larger quantities. Indeed, the evidence in this case was barely stronger than the evidence that the court in *O'Grady* found insufficient to prove trafficking.

The jury was faced with two plausible scenarios, then—that Mason was indeed the dealer in heroin that the State made him out to be, or that he was purely a user of heroin who happened to be caught with a relatively large, multi-day stash. Having in mind the dispute over which scenario was the true one, one final point as to prejudice must be made. Despite the limited explanatory purpose for which the State ostensibly offered this testimony in the first instance, the prosecutor ultimately relied on the testimony for far more. In the end, the State held up the informant's statements about Mason's heroin dealing as proof that the heroin found in Mason's possession was not heroin for his own use but heroin for sale. The first clue as to the prosecutor's purpose in eliciting the content of the informant's statements is found in the very first question that he posed after Mason's initial objection to the testimony was overruled. "Once having received that information about the drug dealing of the Defendant," the prosecutor inquired (without so much as an "alleged" thrown in as a fig leaf), "what action did you take?" R.P.Ex. A 308. Perhaps the incriminatory phrasing of the question can be chalked up to over-zealousness. But the picture becomes clearer in the State's closing argument. There, on no less than three occasions, the prosecutor pointed to the informant's statements that Mason was dealing heroin as proof that Mason was, in fact, dealing heroin. He first did so in recounting the key facts:

> What have the facts told you that we know about this case? Number one, (1), the case started, not on the 6th of June, after one o'clock in the morning when he returned from Florida; the case started on the 14th of May. You saw the photographs of the people coming and going in there, the traffic and the activity. That was on the 15th. On the 14th, unfortunately[,] the camera was not working. But, activity consistent with drug dealing. Based upon that information and, what, a phone call from an confidential informant not more than twenty-four (24) hours after he returns from Florida, with all these goodies [Mason brought gifts for his family], he's found in possession of six bindles of heroin. The informant said he was dealing out of a van. He was found in the van with six bindles of heroin, over three grams of heroin.

---

2. Terrell did testify that the police surveilling the apartment complex in which Mason lived saw a large number of people coming and going, but although consistent with narcotics distribution, this circumstance lends virtually no support to the State's case against Mason, especially when the police could not determine that it was Mason's apartment these individuals were visiting.

3. In this regard, our reading of the record is a bit different from that of the Indiana Supreme Court. That court attributed to Terrell the representation that a *heavy* user of heroin might use five to six dosage units per day. *Mason,* 532 N.E.2d at 1171. However, it appears to us that Terrell identified five to six units, and possibly up to eight, as the amount consumed daily by an *average* user.

R.P. 81–82. After describing the heroin found in Mason's possession, the prosecutor continued:

> So what, it's just heroin. It's not just heroin. The man's back from Florida, who the officer's already been told on several occasions is dealing drugs, comes back from his vacation. He's not back in the city seventeen (17) hours and this is found. Is that consistent with a user—somebody going from fix to fix—to buy for the day? No. That's consistent with somebody that deals heroin, this filth in this community.

R.P. 83. Finally, a recap:

> There's no perfect case. But, I asked you to look at the totality of the circumstances. This wasn't a one-shot deal. The[y] were looking at him for three (3) weeks until he went south. Immediately upon his return they go to a judge—an impartial magistrate—with that information. And, what do they find? Six bindles of heroin packaged—they were packaged to deal and $325.00 in his pocket.... I ask you to look at the end result. What was found, based upon that search warrant? It's right here in front of you. He had a search warrant. He's a drug dealer. The judge said, "go search that drug dealer." And, what did they find? The drugs packaged in six bindles, quantities for [sale].

R.P. 85. The tenor of the prosecutor's remarks is unmistakable: the heroin found in Mason's possession merely confirmed what the informant had already told the police, and what the magistrate who signed off on the search warrant had already found—that Mason was a drug dealer. At this juncture, then, the State used the contents of the informant's tip not to explain anything the police did, but to explain why the jury should construe the evidence found on Mason's person as evidence of heroin distribution rather than heroin use.[4]

If we have slanted our summary of the record in Mason's favor, we have done so to make this essential point: his lawyer had what we believe to be a strong case to make for Mason on appeal that he did not make. Mason's counsel instead made two other arguments: (1) that the trial court erred in denying his motion to suppress the evidence upon execution of the search warrant, and (2) that the evidence was insufficient to support the conviction for distributing heroin. The first argument was a weak one based on the apparent discrepancy in the affidavit that Terrell submitted in application for a warrant to search Mason's van and home: the affidavit suggested that Mason had been distributing heroin from the van within the seventy-two-hour period prior to June 6, but Mason had not returned to Indianapolis from his three-week trip to Florida until 1:00 a.m. on June 6. Based on that discrepancy, Mason moved to suppress the results of the search, contending that Terrell's affidavit contained a deliberate falsehood. But Terrell testified that he understood the seventy-two hour period to embrace the day of June 6 itself, up to the moment he signed the affidavit and the warrant application was presented to the magistrate for approval that evening. R.P.Ex. A 329–30. Indeed, the magistrate who approved the warrant testified that this was his own understanding of the affidavit. R.P.Ex. A 413. The trial court accepted this construction. R.P.Ex. A 260, 262–63, 264, 265, 287–88, 290; see also id. at 332–33. At that point, however problematic Terrell's affidavit may have appeared on its face, Mason

---

4. We note that one of the defense strategies, in addition to suggesting that Mason possessed the heroin for personal use, was to argue that the search which produced the heroin violated Mason's Fourth Amendment rights. See R.P. 88–89. In support of that theory, Mason's attorney asked a number of questions at trial in an effort to establish that Terrell's affidavit, and in particular Terrell's representation that a confidential informant had informed police that Mason had been distributing heroin from the van "within the past (72) hours prior to June 6, 1985," was false. E.g., R.P.Ex. A 351–53, 440–41. Thus, the defense too elicited testimony concerning the informant's tip; and, as the Indiana courts have noted, when probable cause is made an issue in the case, the State may permissibly elicit testimony about the substance of the informant's tip. E.g., O'Grady, 481 N.E.2d at 119–20. But here it was not the defense that opened the door to inquiries about the informant. The defense pursued these inquiries only after its repeated objections to Terrell's testimony about the substance of the tip (R.P.Ex. A 307, 315–16) were overruled. At that juncture, the informant's statements were already before the jury, and the defense arguably was doing no more than making the best out of a bad situation.

faced the daunting task of convincing the Indiana Supreme Court that Terrell, the magistrate, and the trial court were all mistaken in their construction of the affidavit. Not surprisingly, he did not succeed in that effort. *Mason,* 532 N.E.2d at 1170. Mason's second argument was stronger. He found substantial support in *O'Grady* for the notion that the amount and packaging of the heroin found in his possession was not sufficiently indicative of distribution to support his conviction. The Indiana Supreme Court was not persuaded, but in that regard one point is worth noting: among the evidence that the court cited as supporting the conviction was the informant's tip to the police that Mason was dealing heroin *(id.),* a slip of the pen that provides a vivid illustration of how the admission of that tip may have prejudiced Mason before the jury. The fact that the court rejected the arguments that Mason's counsel raised does not speak definitively to their strength, of course; nor can we quantify with any exactitude the strength of those arguments relative to the hearsay argument that Mason's counsel did not make on appeal. It is enough for us to say that the omitted hearsay argument was at least as strong as one of the arguments that was raised, and much, much stronger than the other. There were favorable precedents on point, and the circumstances of Mason's case fit nicely within these precedents. There was, in other words, a very real possibility that Mason might have prevailed on this argument had it been raised. *See Freeman v. Lane, supra,* 962 F.2d at 1258.

Cases post-dating Mason's direct appeal reveal that the Indiana courts continue to maintain a tight rein on testimony recounting the out-of-court statements of informants and other non-testifying individuals. In other words, relief in the form of a new appeal has not been rendered pointless by an intervening change in the law. *Cf. Lockhart v. Fretwell, supra,* 506 U.S. 364, 113 S.Ct. 838. Indiana courts have, on occasion, recognized again that such testimony may be appropriate to explain the course of a police investigation. *E.g., Johnston v. State,* 530 N.E.2d 1179, 1181 (Ind.1988). Yet, when such testimony is admitted for that purpose, they have also required "a reasonable level of assur-

ance" that it is neither offered by the State nor considered by the jury for its truth. *Williams v. State,* 544 N.E.2d 161, 162–63 (Ind.1989). That assurance may be supplied by the omission of inculpatory details from the testimony *(id.* at 163, citing *Head, supra* ), or by a timely cautionary instruction from the court *(id.* at 163, citing *Johnston).* More importantly, the courts have repeatedly emphasized that testimony about anything more than the *fact* of the tip is inappropriate and potentially prejudicial when the actions of the police are not truly in dispute.

In *Craig v. State,* for example, the defendant was charged with molesting his son. The police had commenced an investigation into that offense when the child's mother told them that her son had described a sexual act with his father. A police officer was permitted to recount this statement at trial, ostensibly to show that a crime had been reported and to explain the conduct of the police in interviewing the child. The child's mother herself also repeated the statement in her testimony. The Indiana appellate court acknowledged that *Williams* required "a reasonable level of assurance that such testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement." 613 N.E.2d 501, 503 (Ind.App.1993) (citing *Williams,* 544 N.E.2d at 162–63). The court also agreed that "the better rule is to exclude the content of a hearsay statement when the fact of making the statement itself will suffice to show or explain a police investigation." *Id.* at 504 (citing *O'Grady,* 481 N.E.2d at 119 n. 1). Yet, noting that the Indiana Supreme Court, in the wake of *Williams,* had itself affirmed the admission of such testimony for explanatory purposes without applying the "reasonable assurance" test, the court concluded that it was unnecessary to delve any further into the facts of the case to assess whether the testimony was appropriate. It was enough that the purpose for which it was offered was a legitimate, non-hearsay purpose. *Id.* The Indiana Supreme Court, however, disavowed that rationale and held the admission of the officer's testimony to be erroneous. *Craig v. State,* 630 N.E.2d 207 (Ind.1994). Acknowledging some ambiguity

among the precedents on this subject, the court identified three questions that must be considered before testimony recounting out-of-court statements is admitted over the hearsay objection of the defendant to explain police investigative work: (1) whether the testimony describes an out-of-court statement that in turn asserts a fact susceptible of being true or false; (2) what the evidentiary purpose of the proffered statement is; and (3) if the statement is offered for a point other than its truth, whether that point is truly relevant to some issue in the case, and if so whether the danger of prejudice outweighs its probative value. *Id.* at 211. The court emphasized the importance of relevance inquiry:

> Consideration of the relevance of the fact sought to be proved under the proffered non-hearsay purpose is essential to a proper ruling on the objection.... If the fact sought to be proved under the suggested hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained.

*Id.* In this case, the court concluded, there was no need to recount the child's statement to the mother and her repetition of that statement to the police in order to explain why the police had proceeded as they did:

> Quite clearly, the specific content of the report of the mother to Police Officer Haitian was not a contested issue in this case. Neither was there a significant issue raised with respect to the propriety of the decision of the police to investigate the report. Neither of the out-of-court statements, that of the mother and that of the child as repeated by the mother, had any conceivable relevance apart from proving the facts asserted in the statements.

*Id.* Although the court was thus convinced that the admission of the testimony was erroneous, it found no harm. The child himself had testified at trial about the sexual abuse and confirmed that he had told his mother; and "there was little to undermine the credi-

bility of the boy...." *Id.* Whatever impact the improper testimony may have had by way of bolstering his credibility was therefore minimal. *Id. Accord Potter v. State,* 666 N.E.2d 93, 100–101 (Ind.App.1996).

By contrast, in *Bonner v. State,* 650 N.E.2d 1139 (Ind.1995), a narcotics distribution case like this one, the court found that the admission of police testimony recounting an informant's assertion that the defendant was distributing narcotics to be both erroneous and prejudicial. Again the court emphasized that "[n]either the content of the informant's statements nor the propriety of the police initiating an investigation was seriously questioned at trial." *Id.* at 1141. Nonetheless, three officers had been permitted to repeat the informant's statements at trial, convincing the court that despite a limiting instruction as to the purpose for which the jury might consider the informant's statements, the conviction was tainted:

> We must recognize that, despite other evidence of the defendant's guilt, the erroneously admitted testimony here was likely to have had a prejudicial impact upon the jury. The jury, faced with the responsibility of determining whether the defendant was guilty of the offense of dealing in cocaine on February 3, 1989, was subjected to repeated evidence that police received information before this date indicating that the defendant was participating in "drug trafficking" involving cocaine....

*Id.* at 1141–42. *See also Newbauer v. State,* 569 N.E.2d 759, 761 (Ind.App.1991).[5]

It remains clear, in light of these more recent precedents, that Indiana permits testimony about the tips provided to the police by informants and other witnesses only in limited form and with appropriate safeguards. In Mason's case, however, Detective Terrell testified not merely to the fact of a tip, but twice recounted the substance of the tip—that Mason, who was on trial for distributing heroin, had been seen distributing heroin. He was permitted to do so ostensibly to show why the police initiated their investigation of Ma-

---

5. Here, of course, the informant's statements were repeated by only one witness—Detective Terrell. But the statements were emphasized by the prosecution, and given the relative weakness of the State's case, we cannot say that the Indiana courts would inevitably distinguish cases like *Bonner* on this basis alone. *See O'Grady,* 481 N.E.2d at 119–20 n. 1.

son, and why they ultimately obtained a search warrant and stopped his van, but these matters were not seriously in dispute, and certainly not to the degree that recounting the contents of the informer's statements was necessary. Moreover, despite the explanatory purpose for which the State offered this testimony, no limiting instruction was given. Given that the unidentified informant was the only individual who apparently ever witnessed Mason actually selling heroin, there was a concrete danger that the jury would, in a case where the evidence of guilt was not overwhelming, consider the informant's out-of-court statements for their truth. The State's remarks in closing, as we have pointed out, suggest that this is exactly what the State hoped the jury would do.

Of course, it remains for the Indiana courts ultimately to decide whether Mason's arguments in this regard are persuasive; we do not sit as arbiters of state evidentiary rules on habeas corpus. *Mason v. Duckworth, supra,* 74 F.3d at 818. But, when we are convinced that a petitioner might well have won his appeal on a significant and obvious question of state law that his counsel omitted to pursue, we are compelled to conclude, as we do here, that the appeal was not fundamentally fair and that the resulting affirmance of his conviction is not reliable. *Freeman,* 962 F.2d at 1258; *Gray,* 800 F.2d at 646. The failure of Mason's counsel to pursue this issue on appeal, when an effective advocate would have, entitles him to a second chance at direct appellate review.

For purposes of any future habeas proceedings that might ensue, we note, as we did at the outset of this opinion, that our analysis in this case has been restricted to Mason's claim that his appellate counsel was ineffective for failing to argue that the admission of testimony concerning the informant's statements was inadmissible hearsay under Indiana law. We do not reach, and we express no opinion upon, any other claim that Mason has raised in his habeas petition.

### III.

The judgment of the district court is reversed, and the case is remanded with directions to issue an order granting the peti-tion for a writ of habeas corpus unless, within whatever reasonable period of time the district court deems appropriate, Mason is afforded a new appeal in which he may raise the hearsay argument omitted from his original direct appeal or, in the alternative, Mason is granted a new trial. *See Evitts v. Lucey, supra,* 469 U.S. at 390–91, 105 S.Ct. at 833; *Mayo v. Henderson, supra,* 13 F.3d at 537; *Claudio v. Scully, supra,* 982 F.2d at 806; *Fagan v. Washington, supra,* 942 F.2d at 1156; *Barry v. Brower, supra,* 864 F.2d at 300–01; *Matire v. Wainwright, supra,* 811 F.2d at 1439; *Grady v. Artuz, supra,* 931 F.Supp. at 1053–54; *Laffosse v. Walters, supra,* 585 F.Supp. at 1214.

REVERSED and REMANDED.