# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 03-2228

ALFRED MARTIN,

*Petitioner-Appellant,*

v.

JOHN EVANS, Warden,

*Respondent-Appellee.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 7657—**Harry D. Leinenweber,** *Judge.*

————————

ARGUED MARCH 31, 2004—DECIDED SEPTEMBER 27, 2004

————————

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* On November 8, 1993, Alfred Martin's wife, Jacqueline, went to his apartment to ask whether he had bought their daughter a coat and to ask for money. Martin says that when he refused to give her money, Jacqueline started swinging at him. Martin says he grabbed her by her shoulders, turned her around and pulled her towards him; he was holding her with his left arm across her chest and right arm across her neck. They fell onto the couch and Jacqueline continued to kick and swing and Martin held her tight until she stopped moving.

The medical examiner who performed the autopsy testified that Jacqueline died of strangulation due to compression

of the neck and chest, noting that it would take a minimum of two minutes of pressure for someone to die from neck or chest compression.

In January of 1996, a jury found Alfred Martin guilty of first-degree murder and sentenced him to 50 years in prison. After failing on direct appeal, Martin filed a petition for writ of habeas corpus in the district court raising the following claims: 1) appellate counsel rendered ineffective assistance by refusing to raise "issues of merit" on direct appeal; 2) the trial court erred in allowing the State to call Shannon Carr, Jacqueline's daughter, as a witness on the eve of trial without granting Martin's request for a continuance; 3) the trial court abused its discretion in allowing the State to cross-examine the petitioner about other crimes that it could not prove; 4) the trial court abused its discretion in allowing a weapon from a prior bad act to go to the jury during deliberations; 5) the State knowingly introduced and argued perjured testimony to establish intent; 6) prosecutorial misconduct during closing argument when the State told the jury how it should weigh the evidence; 7) trial counsel rendered ineffective assistance; and 8) the petitioner received an excessive sentence. The district court denied federal habeas relief in a memorandum and order entered on January 8, 2003.

Three issues have been certified for appeal to this court: 1) whether Martin was denied his Sixth Amendment right to effective assistance of appellate counsel; 2) whether the above-stated claims three through seven were procedurally defaulted; and 3) whether Martin's claim regarding the denial of a continuance is non-cognizable.

## DISCUSSION

Martin filed his petition for habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so its standard of review governs

his claims. *Lindh v. Murphy*, 521 U.S. 320, 322 (1997). Under the AEDPA, habeas relief is available only if the petitioner demonstrates that the state court's adjudication of his federal constitutional claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003).

We begin with Martin's ineffective assistance of appellate counsel claim. Martin argues that he was denied his Sixth Amendment right to effective assistance of counsel when his counsel on direct appeal failed to raise several claims of merit and failed to present all of the relevant facts in the issues that were raised. Ineffective assistance of counsel claims require the petitioner to establish that his counsel's performance fell below an objective standard of reasonableness, and this deficiency actually caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003). However, counsel is not required to raise every non-frivolous issue on appeal. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). There is a strong presumption that counsel's performance is reasonable and this presumption has particular force when the ineffective assistance claim is based solely on the trial court record. *Yarborough v. Gentry*, 540 U.S. 1 (2003). Martin argues that his appellate counsel rendered ineffective assistance in not alleging various instances of trial counsel's ineffectiveness.

At the trial, Jacqueline's 11-year-old daughter, Shannon Carr, testified that on August 22, 1991, Martin climbed up into her bedroom window and asked to be let into the house; she refused. She then heard Martin say, "If I can't have her,

can nobody have her." Then she heard her mother screaming and saw that her face had been cut and she called the police. Officer Stan Mullins testified that on August 22, 1991, he responded to a battery in progress at 4957 W. Erie. Upon his arrival to the scene, he saw Jacqueline bleeding from her left arm and face. He arrested Martin and placed him in the squad car where he heard Martin say he, "should've killed the bitch."

Martin faults trial counsel for failing to "prevent, impeach, or dilute" the testimony of the victim's daughter, Shannon Carr, with regard to the August of 1991 prior bad act. Br. of Petitioner at 17. Martin contends that his trial counsel was inadequately prepared to defend against the State's motion to use the other crime evidence. Br. of Petitioner at 18. The government argues that Martin waived this claim when he failed to raise the issue to the district court. Martin did attack appellate counsel for refusing to "present issues of merit on direct appeal," but he failed to specify any particular issues and the district court interpreted "issues of merit" as "those that the post-conviction court found to be waived," which included Martin's ineffective assistance of trial counsel claim. The post-conviction petition, however, reveals that the petitioner did not challenge trial counsel's representation on the specific bases now asserted.

Moreover, Martin concluded in error that his trial counsel's "complete lack of preparation" resulted in the grant of the state's motion. Rather, the court granted the motion because Illinois law expressly provides for the admissibility of other crimes evidence to prove intent. *People v. Illgen*, 583 N.E.2d 515, 519 (Ill. 1991). The record establishes that counsel vigorously represented Martin's interests and set forth the best possible argument in light of the clear state of the law. His appellate counsel's decision to refrain from attacking trial counsel's representation on this basis was not objectively unreasonable. *Lee*, 328 F.3d 900-01. Moreover, because the underlying trial counsel claim is meritless, there is

not reasonable probability that the outcome of the appeal would have been different had counsel raised the issue. *Id.* at 901.

Martin argues next that his trial counsel failed to develop a strategy to rebut Shannon Carr's testimony. Martin finds significance in the fact that Ms. Carr testified that she heard Martin tell the victim "if he can't have her, can nobody have her" while the police report from the August of 1991 bad act stated that the victim informed the arresting officer, Officer Mullins, that Martin said, "[i]f I can't have you, nobody's gonna want you." According to Martin, "[o]ne statement suggests an intent to kill, the other suggests an intent to make Jacqueline unattractive by cutting her face." Br. of Petitioner at 19. Martin contends that his counsel should have cross-examined Officer Mullins or called his partner to testify about the victim's statement in an effort to impeach the credibility of Ms. Carr. This argument offers a distinction without a difference. The requisite intent for first-degree murder is the intent to kill or cause great bodily harm, or the knowledge that such acts will cause death, or the knowledge that such acts will cause great bodily harm. 725 ILCS 5/9-1. Even if the police report supported Martin's argument that he intended only to slash the victim's face, the act certainly demonstrates an intent to cause great bodily harm which is sufficient to sustain a conviction for first-degree murder.

Moreover, the same police report contains Martin's statement to the police that he "should've killed the bitch." The jury heard this evidence when Officer Mullins testified that Martin "made a statement to me and my partner that he should have killed the bitch." Br. of Respondent at 17. The trial counsel made an informed and strategic decision to not cross-examine Officer Mullins with the police report as it would have allowed the State to reiterate on redirect examination Martin's statement that he "should've killed the bitch." His counsel's decision here was not objectively

unreasonable, nor would the presentment of this issue on direct appeal have changed the outcome. The Illinois Appellate Court stated:

> Our careful review of the record reveals sufficient evidence from which the jury could have concluded that defendant intentionally or knowingly choked his wife to death. Evidence was introduced that defendant had previously attacked his wife and after one attack had stated that he should have killed her. Defendant was clearly aware that he had choked his wife, as evidence [sic] by the fact that he informed police officers of such when they arrived at the scene. Furthermore, according to the medical examiner introduced by the State, defendant must have squeezed his wife's neck for at least two minutes in order to kill her. These facts are sufficient to uphold the jury's finding that defendant committed first degree murder.

Br. of Respondent at 18.

Martin also argues that his trial counsel was ineffective in failing to argue that the weapon from the August of 1991 bad act should not have gone back with the jury during deliberations because the prejudicial nature of the weapon outweighed its probative value. Martin waived this argument by failing to present this specific ground of trial counsel's ineffectiveness in the district court. *Winsett v. Washington*, 130 F.3d 269, 273 (7th Cir. 1997). In any event, Martin is unable to demonstrate that appellate counsel was objectively unreasonable in not raising the issue or that there is a reasonable probability that the result of his direct appeal would have been different had this issue been argued.

Martin further argues that his trial counsel's failure to "prevent, impeach, or dilute" Ms. Carr's testimony allowed the State to misrepresent the facts during closing argument on the issue of intent. Br. of Petitioner at 20-21. Although Martin expressly frames his issues in terms of trial coun-

sel's ineffectiveness, the argument ultimately challenges the prosecution's statements regarding Ms. Carr's testimony. To the extent that Martin is attempting to argue that appellate counsel was ineffective for failing to raise the perjured testimony issue, this claim lacks merit. Martin fails to offer any support for the proposition that the State knowingly used false testimony and because the perjured testimony claim fails, so too does the corresponding ineffective assistance argument.

Martin's final attack on his trial counsel's representation concerns the failure to file a post-trial motion to reduce his sentence. Although he correctly notes that his counsel's inaction resulted in a waiver of his sentencing claim on direct appeal, Martin fails to acknowledge that the Illinois Appellate Court alternatively considered and rejected the argument on the merits. Br. of Petitioner App. at 39.

Finally, Martin argues that his appellate counsel was ineffective in not raising the argument that the trial court erred in allowing the State to cross-examine Martin about events that it could not prove. Br. of Petitioner at 25. Specifically, Martin challenges the State's questions concerning the victim's filing of divorce papers and instances where he was escorted from Walgreens, the victim's place of employment. The State asked Martin how many times he made an appearance while the victim was working. He responded, "[m]aybe two or three times. I don't know." *Id.* His defense counsel objected and the court overruled the objection. The State then asked, "[h]ow many of those times did you have to be escorted out?" and Martin answered, "[n]ever. Never that I can remember, not one time." *Id.* His trial counsel objected and requested a sidebar. During the sidebar, the State conceded that it could not "prove it up" and the court subsequently instructed the jury to disregard the question and answer and by instructing the jury to disregard questions to which objections were sustained. *People v. Hall*, 743 N.E.2d 521, 544 (Ill. App. Ct. 2000).

Martin's attack on the State's question regarding the divorce papers is similarly baseless. The prosecution asked Martin, "[w]hen did you find out she had filed for divorce?"and Martin responded, "[s]he never said that she did." Br. of Respondent at 24. His trial counsel objected and the court overruled the objections. His counsel requested a sidebar, and during the sidebar, the court asked the State if it had any evidence of the filing of divorce papers. The prosecutor informed the court, "I only know the mother told me yesterday that the divorce papers arrived the day she died, and that what the mother told me." *Id.* The court again overruled the objection and instructed the State to tender the divorce papers if it had them. *Id.* Martin's argument is premised on the assertion that the State could not prove that the victim filed for divorce. This theory, however, fails to acknowledge that the prosecution had reason to believe the divorce had been filed based on the mother's representations. There was no ineffective assistance of counsel to discuss.

And so we move to the issue of procedural default. The district court's ruling on procedural default is reviewed de novo. *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003). Procedural default occurs when a petitioner fails to follow the state procedural requirements on presenting federal claims and therefore deprives the state court of the opportunity to address those claims. *Id.* at 732. Such claims are defaulted as:

> [a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on as state procedural ground that is independent of the federal question and adequate to support the judgment.

*Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2003).

The district court properly found the following claims procedurally defaulted in accordance with the independent and

adequate state ground doctrine: 1) the trial court abused its discretion in allowing the State to cross-examine the petitioner about other crimes that it could not prove; 2) the trial court abused its discretion in allowing the weapon from the August of 1991 bad act to go back with the jury during deliberations; 3) prosecutorial misconduct occurred during closing arguments when the State told the jury how it should weigh the evidence; and 4) the petitioner was denied the effective assistance of counsel at trial. The post-conviction court concluded that each of the above-stated claims were waived as the issues involved matters of record which could have been raised on direct appeal. Br. of Petitioner App. at 129. The court's express reliance on the established rule of waiver renders the claims procedurally defaulted for the purpose of federal habeas review. *Moore*, 295 F.3d at 774.

Martin contends that his procedurally defaulted claims should be reviewed on the merits because appellate counsel's ineffectiveness provides "cause" for the default. Br. of Petitioner at 27. Because Martin's underlying ineffective assistance claims lack merit, the argument similarly fails as an assertion of cause.

Now the penultimate claim of error: the state court's adjudication of Martin's perjured testimony complaint. The Supreme Court precedent governing perjured testimony requires a new trial if a criminal defendant establishes: 1) the State presented perjured testimony; 2) the State knew or should have known of the perjury; and 3) there is some likelihood that the testimony could have affected the verdict. *United States v. Agurs*, 427 U.S. 97, 103 (1976).

The post-conviction court properly identified and applied the *Agurs* standard and concluded that the prosecution did not use perjured testimony, stating:

> defendant has failed to substantiate his allegations that Shannon Carr gave perjured testimony. Defendant has

> provided no supporting documentation whatsoever. Defendant's claim of perjury is, thus, nothing more than a bald conclusion. As such, it does not warrant relief.

Br. of Petitioner App. at 129. The court further determined that Martin had not demonstrated that the prosecutors knew or should have known of any falsity in Carr's testimony, and that the evidence against Martin was substantial and that there was no likelihood that even if it was perjured testimony, that the outcome would have been different. *Id.*

And finally, Martin argues that the trial court abused its discretion when it denied his request for a continuance to interview Shannon Carr. The district court, however, properly determined that this claim is non-cognizable for the purpose of federal habeas review. Martin has the burden of demonstrating that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2254(a). The trial court's denial of a continuance, however, is a matter of state evidentiary law that does not provide a basis for federal habeas relief. *United States ex rel. Searcy v. Greer*, 768 F.2d 906, 913 (7th Cir. 1999). Nevertheless we note that, on the day before trial, the prosecution interviewed the victim's family and discovered that Shannon Carr was at home during the events on the 22nd of August, 1991. The State contacted defense counsel and left a voice mail message indicating that it intended to call Ms. Carr as a witness to testify about the incident. The following morning, defense counsel moved for a continuance to interview the witness in a neutral setting and the prosecution informed the court that it had no knowledge that Ms. Carr was home until it interviewed the family and further stated, "I was planning on proceeding with just the police officer who arrived on the scene and pulled the defendant off, but the daughter, in fact was part of the incident." Br. of Respondent at 35. The prosecution further stated that it would provide defense counsel with Ms. Carr's address and that it would make the witness available the following

morning if the defense counsel wished an interview. After instructing the State to tender the address and to make the witness available, the court denied the motion for a continuance and subsequently denied defense counsel's request to interview Ms. Carr in a neutral setting.

Martin fails to demonstrate that the trial court's denial of a continuance denied him due process; the court clearly conditioned its ruling on Ms. Carr's availability to be interviewed the following morning, thereby rendering the need for a continuance unnecessary.

Based on the foregoing analysis, Alfred Martin is not entitled to federal habeas relief on any of his claims.

AFFIRMED.

A true Copy:

      Teste:


_____
***Clerk of the United States Court of Appeals for the Seventh Circuit***