NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted November 4, 2010[*]
Decided November 23, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-1655

| | |
|---|---|
| ROBERT HAROLD MAGEE, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 09-C-750 |
| | |
| JUDY SMITH, | Aaron E. Goodstein, |
| *Respondant-Appellee.* | *Magistrate Judge.* |

**O R D E R**

Robert Magee, a Wisconsin state prisoner, appeals the denial of his petition for collateral relief under 28 U.S.C. § 2254. A Wisconsin jury convicted Magee of sexually assaulting the ten-year-old daughter of his girlfriend, *see* WIS. STAT. § 948.02(1), and Magee was sentenced to five years' imprisonment to be followed by 15 years of extended supervision. Magee asserts that he was denied effective assistance of counsel at trial when

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

his lawyer failed to object to the judge's decision to give the jury unsupervised access to the videotaped interviews of his victim.

The videotaped interviews were important to the state's case. The victim took the stand at trial but gave no details of the assault, so the tapes contain the only first-hand account of what happened. In the first video, the victim gives her initial report of the incident to a police detective and a social worker. In the second video she recounts a slightly different version of the incident to a nurse. The state also introduced video excerpts from Magee's interrogation in which he denies having any inappropriate contact with the victim.

Magee did not testify at trial. Instead, the defense focused on challenging the reliability of the victim interviews. Toward this end a defense expert evaluated the techniques employed by the officials who interviewed the victim and opined that the reliability of the victim's statements may have been undermined by leading questions, examiner bias, or previous discussions she had about the incident.

During deliberations the jury asked to review the first video, which contained the victim's initial report of the incident to a police officer and a social worker. The judge sent the bailiff into the jury room with the video and instructed the bailiff to make sure that the jury watched only the footage played at trial, about 46 minutes long. The judge also sent the other two videos played at trial, each about 40 minutes in length, reasoning that "if they ask for one, we'll send them all." The jury returned its verdict 39 minutes after the videos arrived in the jury room.

Magee first raised his ineffective-assistance claim in state post-conviction proceedings. He argued that giving the jury unsupervised access to the interview was error because it created an unnecessary risk that members of the jury would make too much of the victim's account of the incident through repeated viewings of the victim's interview. He sought to have his conviction reversed on the ground that his counsel was deficient for failing to object to the viewing. He contends, and the state does not dispute, that admission of the tapes into the jury room was contrary to state procedures. Those procedures, set forth by the Wisconsin Supreme Court after he was convicted, require that when recordings played at trial are replayed for the jury during deliberations, the replay occur in the courtroom, under the supervision of the judge. *See State v. Anderson*, 717 N.W.2d 74, 84 (2006).

The state appellate court ruled that any error committed by Magee's trial counsel was harmless. Focusing on the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984), the court concluded that Magee could not show that objecting to the

unsupervised viewing of the tape would probably have changed the outcome of the trial. Critical for the court was that, in his post-conviction petition, Magee did not challenge the decision to replay the tape to the jury during deliberations; he challenged only the decision to replay it in the jury room without supervision from the court. Accordingly, Magee had to show not only that replaying the tape in the jury room was harmful, but that it was measurably *more* harmful than replaying it in the courtroom. That shortfall aside, the court found that his contention that the jury placed undue weight on the first video was speculative. The record is silent about which tape, if any, the jury watched, but even if as Magee suspects the jury watched only the first tape, the court reasoned that there could not have been much time for mischief: the jury returned a verdict 39 minutes after receiving the tapes, and each tape contained more than 39 minutes of footage. Nor was it evident to the court that further review of the first tape favored the prosecution: the jury's curiosity could just as plausibly be traced to doubts over the reliability of the interviews raised by the defense expert.

Magee raises several claims in his federal petition, but the district court certified for appeal only the issue whether his trial counsel was ineffective. We review the state-court decision for unreasonable application of *Strickland*, the applicable Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Under *Strickland*, Magee must show not only deficient performance by his trial counsel, but also a reasonable probability that the poor performance caused prejudice. *See Strickland*, 466 U.S. at 687; *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009).

On appeal Magee maintains that the state appellate court unreasonably applied *Strickland*. He again contends that sending to the jury room the videotape of the victim's interview impermissibly increased the likelihood that the jury would return a guilty verdict through unsupervised, repeated viewings of the tape.

Magee cannot satisfy his burden of establishing that the Wisconsin appellate court unreasonably applied the prejudice strand of *Strickland*. To prevail on an ineffective-assistance claim, a petitioner must "affirmatively prove" that the alleged errors had an adverse effect on his defense. *See Strickland*, 466 U.S. at 693. The prejudice prong requires something beyond speculation that the jury verdict may have been tainted by counsel's deficiency. *See Brown v. Finnan*, 598 F.3d 416, 424-25 (7th Cir. 2010); *George v. Smith*, 586 F.3d 479, 485-86 (7th Cir. 2009). Although it is conceivable that harm could flow from a lawyer's failure to object to the unrestricted viewing of a recording, speculation is all Magee provides here. He argues that the jury might have watched the first videotaped interview more than once; that from multiple viewings the jury might have found victim's statements reliable; and that the jury would probably not have done so had it watched the tape in the courtroom. The state court reasonably concluded that, given the brief time that the jury had

unsupervised access to the videotapes, this stack of possibilities does not create a reasonable probability that by sending the tapes to the jury room, the judge undermined confidence in the outcome of the trial.

Perhaps because of the evidentiary difficulty he faced in establishing prejudice, Magee argues that the district court should have granted his petition because the prejudice here was "inherent." He reasons that the first videotaped interview of the victim formed a central part of the government's case and that replaying it could not plausibly have worked in his favor. This argument fails on two levels. First, it is possible that the jury came away from a second or later viewing *less* persuaded by the government's case, even if it was still inclined, based on other evidence, to return a guilty verdict. The defense spent nearly all of its time attacking the reliability of the victim's interviews. The state appellate court thus reasonably concluded that the jury might have requested the video because it was considering the strength of Magee's defense. But even if the second viewing could not possibly have benefitted Magee, it does not follow that the state court unreasonably applied *Strickland*. Magee never contended that a supervised viewing of the videotape in the courtroom would have been improper. But if, as Magee believes, *any* viewing of the tape could have only harmed the defense, it was not unreasonable for the state court to conclude that the brief, unsupervised viewing in the jury room did not create a material harm over a brief, supervised viewing in the courtroom.

In a similar vein, Magee argues that his trial counsel should have requested a limiting instruction before the judge sent the tapes into the jury room. But this argument encounters the same hurdle as the previous one: Magee can only theorize that the jury overemphasized the video, and it would require still further conjecture to suggest that a limiting instruction would have cured the undue emphasis.

As a separate ground for ineffective assistance, Magee contends that his trial counsel should have requested an evidentiary hearing to determine the admissibility of emails sent by the victim's uncle. This contention, however, was procedurally defaulted, and we may not review it here. *See Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010).

                                                                                                    AFFIRMED.